On appellant's petition for reconsideration filed May 31, petition for
reconsideration allowed; former opinion (167 Or App 18, 2 P3d 405) adhered to
September 13, 2000

In the Matter of
Trebin Jenkis, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Appellant,*

*v.*

Mysta PROCTOR
and Brandon Jenkis,
*Respondents.*

(9607-81949; CA A105270)

10 P3d 332

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Laura S. Anderson, Assistant Attorney General for petitioner.

Kathryn Worden Underhill for child.

No appearance for respondents.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

## DEITS, C. J.

Appellant, the State of Oregon, through SOSCF, seeks reconsideration of our decision in this case. Specifically, the state asks that we reconsider our holding that father's parental rights should be terminated. We allow the petition and, on reconsideration, adhere to our original opinion.

■ In our original opinion in this case, *State ex rel Juv. Dept. v. Proctor*, 167 Or App 18, 2 P3d 405 (2000), we recognized that it was the state's position that, if mother's parental rights were not terminated, father's rights also should not be terminated. Although we held that mother's parental rights should not be terminated, we declined to follow the state's suggested disposition with respect to father. We explained that, because there was clear and convincing evidence that father was unfit and no reason had been offered by any party as to why it was not in child's best interests to terminate father's rights, his rights should be terminated. *Id.* at 33.

In its petition for reconsideration, the state argues that, although the state proved by clear and convincing evidence that father was unfit as a parent (ORS 419B.504) by reason of conduct or condition not likely to change within a reasonable time, child's best interests are not served by terminating only father's parental rights at this time. The state explains that, in its view, "[t]ermination of father's rights would eliminate the child's right to receive financial support from father, and the potential opportunity in the future to receive health insurance, death or other financial benefits flowing from his legal relationship with father." According to the state, the retention of these financial benefits for child outweighs any benefit to him resulting from the termination of father's rights.

Assuming the state is correct that, upon termination of father's parental rights, child does lose all of the financial benefits from father that the state identifies,[1] we do not agree

---

[1] In child's response to the state's petition for reconsideration, in addition to urging the court to affirm the termination of father's parental rights, child takes the position that termination does not necessarily end father's financial obligations to child, including his support obligation. Because the issue of the scope of a

with the state that the potential financial benefits to child outweigh the detriments resulting from father retaining his parental status. There are circumstances that could exist to support the conclusion that it is in a child's best interests for a parent's rights not to be terminated in order to continue financial support, even though the parent has been proved unfit under ORS 419B.504. However, these are not such circumstances.

. Our decision in *State ex rel SCF v. Reynolds*, 149 Or App 36, 941 P2d 1059, *rev den* 326 Or 233 (1997), provides an example of circumstances in which the potential benefits to a child outweigh the potential detriments from the continuation of a parent's status. In that case, however, this court specifically found that there was no abuse of the children. *Id.* at 39. We also observed that the finding that the father neglected the children weighed in favor of termination, but that "[t]hat circumstance [was] mitigated by father's continual assertion that he [would] not seek custody or visitation[.]" *Id.* at 41.

The circumstances here are very different from those in *Reynolds*. As the trial court and this court found, child here was seriously injured while in the parents' care, and the evidence shows that father was physically abusive to mother. The record also demonstrates that father has failed to acknowledge, in any way, his responsibility for the injuries to child, nor does he acknowledge any need to improve his anger management or parenting skills. Further, in contrast to the situation in ·*Reynolds*, father *is* seeking continued involvement in child's life. The possibility that child may receive some benefit from any child support that father would be obligated to pay, if he retained his parental status,[2] simply does not outweigh the risks to child from father's continued involvement as his parent.

---

parent's continuing financial responsibility for a child following termination of parental rights is not before this court as part of these termination proceedings, we express no view on that question at this time.

   [2] In 1996, father was ordered to pay $113 per month in child support. It is difficult to understand how this amount, even if supplemented by any of the other benefits that the state speculates *may* come his way, could possibly outweigh child's physical well-being and safety.

The state takes the position here that "the primary goal and purpose of termination of parental rights is to provide the child with an opportunity to live in a permanent, nurturing home, *ordinarily by means of adoption*." (Emphasis added.) In the state's view, because mother's parental rights were not terminated in this case and, consequently, adoption is not an option, the termination of father's rights, if mother's are not also terminated, serves no purpose.

■ The state points to ORS 419B.090(4), ORS 419B.500, OAR 413-110-0210, and OAR 413-110-0220[3] to support its argument that terminations should occur only when the purpose is to free a child for adoption. However, there is nothing in the language of the statutes on which the state relies or in the statutes that establish the criteria for termination of parental rights that limits the court's authority to terminate a parent's rights *only to* circumstances where an adoption is planned. For example, ORS 419B.090(4) characterizes the state's obligation as to "create or provide an alternative, safe

---

[3] ORS 419B.090(4) provides, in part:

"Although there is a strong preference that children live in their own homes with their own families, the state recognizes that it is not always possible or in the best interests of the child or the public for children who have been abused or neglected to be reunited with their parents or guardians. In those cases, the State of Oregon has the obligation to create or provide an *alternative, safe* and *permanent* home for the child." (Emphasis added.)

ORS 419B.500 provides, in part:

"The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in ORS 419B.100 may be terminated * * * only upon a petition filed by the state or the child for the purpose of freeing the child for adoption if the court finds it is in the best interest of the child."

OAR 413-110-0210 provides:

**"Values**

"(1) Every child needs and deserves a safe, nurturing and permanent home. Termination of parental rights is one means by which SOSCF can achieve adoption of a child. Adoption is one of several possible permanent plans.

"(2) No child shall be freed for adoption without the probability of being placed in a permanent home."

OAR 413-110-0220 provides:

**"Policy**

"SOSCF shall only initiate a termination of parental rights action to free a child for adoption and where SOSCF has determined that adoption is in the child's best interest, and that other possible permanent plans such as guardianship would not be a more appropriate plan." (Boldface in original.)

and permanent home for the child." Typically, that safe, permanent home is an adoptive home. However, as child points out in his response to the state's petition for reconsideration, that is not always the case. In some cases, the plan for creating a safe, permanent home for the child may be with the other parent.

The state is correct that, in some instances, when the plan is to seek to make one parent's home the child's permanent home, it would serve no purpose to terminate the other parent's rights, even if the other parent has been proved unfit by reason of conduct or condition not likely to change in a reasonable time. *See Reynolds,* 149 Or App at 39-41. However, whether termination of one parent's rights is appropriate must be determined based on an assessment of the particular circumstances.

In this case, no one disputes that father is unfit due to conduct and conditions not likely to change in a reasonable time. Father's conduct toward child and mother has been abusive and controlling. As child correctly points out, termination of father's rights at this time does serve a purpose in that it protects child's health and safety by eliminating father's standing to pursue any control with respect to child, such as custody, visitation, or decision making. It also removes the possibility that father could obtain custody or control over child in the event of mother's future incapacity or death.

The state asserts that father's continued parental status should not cause concern for child's health and safety, because there are legal mechanisms to protect child that fall short of complete severance of father's parental rights. Again, that may be true in some circumstances. However, we do not believe that the existence of other protective mechanisms that may be sought by mother or SOSCF, if father's continued status as a parent presents a threat to child's health or safety, is sufficient here to justify not terminating father's rights.

For all of the above reasons, we conclude that the risks to child from father's continued involvement outweigh any possible financial benefits that child might receive from

father. Accordingly, we adhere to our decision to terminate father's parental rights.

Petition for reconsideration allowed; former opinion adhered to.